**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: ASBESTOS PRODUCTS** | : | **CONSOLIDATED UNDER** |
| **LIABILITY LITIGATION (NO. VI)** | : | **MDL DOCKET NO. 875** |

| | | |
|---|---|---|
| **MICHAEL GRANT MASON,** | : | |
| **Representative of the Succession of** | : | **EDPA CASE NO.: 2:11-cv-66772-ER** |
| **Milan Arthur Barackman** | : | |
| | : | |
| **VS.** | : | |
| | : | |
| **FOSTER WHEELER, LLC, ET AL.** | : | **(U.S.D.C. PENNSYLVANIA EASTERN)** |
| | : | |
| **Defendants** | : | |

**MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS WITH INCORPORATED**
**SUPPORTING MEMORANDUM FILED**
**ON BEHALF OF DEFENDANT OWENS-ILLINOIS, INC. D/B/A O-I**

**MAY IT PLEASE THE COURT:**

Defendant Owens-Illinois, Inc., d/b/a O-I (hereinafter "Defendant" or "O-I"), by and through

its undersigned counsel of record, Forman Perry Watkins Krutz & Tardy LLP, and pursuant to

Federal Rule of Civil Procedure 56 and Local Rule 7.1, respectfully moves for summary judgment

as to all claims pending against O-I in the above-referenced matter on the grounds that Plaintiff has

failed to identify O-I as a source of exposure.  There is no genuine dispute between the parties as

to any material fact and O-I is entitled to judgment as a matter of law.  O-I requests oral argument

under Local Rule 7.1(f).  O-I provides the following in support of its motion.

**I.     SUMMARY JUDGMENT IN FAVOR OF O-I IS APPROPRIATE**

    **A.     Summary of Argument**

In light of the unequivocal lack of testimony that Mr. Barackman worked with or around an

asbestos-containing product associated with O-I, it is clear that no reasonable person could regard

O-I as a cause of Plaintiff's injuries.  There is no fact in dispute to support denial of O-I's motion for summary judgment, as Plaintiff has failed to provide even one scintilla of evidence to demonstrate that any product or conduct for which O-I is responsible caused Mr. Barackman's alleged asbestos-related disease.  Plaintiff's only witness did not work with Mr. Barackman until seven (7) years after O-I relinquished all ownership and control over the Kaylo line, and that witness offered zero evidence identifying an O-I product or facility as the source of Mr. Barackman's alleged asbestos exposure.  Because the record is completely devoid of evidence that O-I performed any act or manufactured any asbestos-containing product that contributed to the Mr. Barackman's injuries or damages, summary judgment is appropriate with respect to O-I.

### B.    Factual And Procedural Background

The instant asbestos action was originally commenced against O-I and numerous other defendants on June 1, 2011 in the United States District Court for the Eastern District of Louisiana. *See* Plaintiff's Original Complaint, attached hereto as Exhibit A.  The complaint alleged that Decedent Milan A. Barackman was exposed to numerous asbestos-containing products and equipment made, manufactured, and/or supplied by the defendants, including O-I, throughout his work career serving on United States Navy vessels in the 1960s and 1970s. *Id.*  O-I was sued in the capacity of an "Asbestos Manufacturer Defendant," and Plaintiff claimed that O-I was liable as a manufacturer of an asbestos-containing product called Kaylo to which Mr. Barackman allegedly encountered through his service on the U.S. naval vessels.  *Id.*  The complaint contained no allegations of liability for premises owners or employers.  *Id.*

On July 12, 2011, this matter was transferred to this Court via Transfer Order No. 1033.  On August 24, 2011, this Court issued a Scheduling Order setting forth deadlines for the parties to

complete discovery, submit expert reports, and file dispositive motions.  Pursuant to the Scheduling Order, dispositive motions must be filed by April 7, 2012. The Court extended the deadlines for discovery and for the parties to file their expert reports in its February 24, 2012 Order.  The February 24, 2012 Order did not contain a new date for the filing of dispositive motions.  Therefore, O-I respectfully reserves its right to supplement this motion and incorporated supporting memorandum accordingly in the event that case deadlines are continued or additional discovery or allegations are served by Plaintiff's Counsel.

On March 27, 2012, Plaintiff filed his First Amended Complaint.[1]  *See* Plaintiff's First Amended Complaint, attached hereto as Exhibit B.  Like Plaintiff's original complaint, the amended complaint did not address the liability of premise defendants or employers, and O-I was again named as a party liable only as an "Asbestos Manufacturer Defendant."  *Id*.  In fact, the amended complaint was virtually identical to the original, save for the addition of one sentence stating "Mr. Barackman was exposed to asbestos when he worked for Owens Illinois Glass Co., in Streator, Illinois from February 1956 to September 1956."  *Id*. at paragraph 17.  While Plaintiff's amended complaint contained no specific allegations of liability against O-I other than the general paragraphs applicable to asbestos manufacturer defendants, discovery and case development are ongoing, and O-I respectfully reserves its right to supplement this motion accordingly.  Further, O-I respectfully reserves its right to file additional or supplemental briefing regarding the choice-of-law rules

---

[1]O-I is simultaneously filing its answer and affirmative defenses to Plaintiff's complaint.  It waives no defenses or makes any admissions through the filing of the instant motion, as the construction of the facts herein are for the purpose of viewing the evidence in the light most favorable to Plaintiff in accordance with summary judgment standards.

applicable to Plaintiff's claims against O-I.[2]

### 1.      O-I Sold Its Product Line In 1958

Owens-Illinois was a manufacturer of Kaylo thermal insulation products, which sometimes contained asbestos, until April 30, 1958, when it sold the entire Kaylo thermal insulation division (product, raw materials, real property, patents, right to accounts receivable for goods sold after the effective date, etc.) to Owens-Corning Fiberglas (hereinafter "OCF").  *See* February 17, 2005 Affidavit of Susan Gibbons and Sales Agreement, attached as Exhibit C.  *See generally Egan v. Kaiser Aluminum & Chemical Corp.*, 94-1939 (La. App. 4 Cir. 5/22/1996) 677 So. 2d 1027, 1034 (noting that Kaylo packaging changed one month after April 30, 1958 sale to reflect OCF ownership); *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E. 2d 242, 249 (Ill. 1999) (noting sale of Berlin, New Jersey Kaylo plant to OCF as part of 1958 sale); *Allen v. Owens-Corning Fiberglas Corp.*, 571 N.W. 2d 530, 532 (Mich. App. 1997), FN 1; *Buttram v. Owens-Corning Fiberglas Corp.*, 941 P. 2d 71, 75 (Cal. 1997), FN 2; *Owens-Corning Fiberglas Corp. v. Garrett*, 682 A. 2d 1143, 1146 (Md. 1996): *Owens-Illinois, Inc. v. United Ins. Co.*, 650 A. 2d 974, 977 (N.J. 1994); *Owens-Illinois, Inc. v. Aetna Cas. And Sur. Co.*, 597 F. Supp. 1515, 1517 (D.C.D.C. 1984); *Rutherford v. Owens-Illinois, Inc.*, 941 P. 2d 1203, 1209 (Cal. 4th 1997); *Strickland v. Owens Corning*, 142 F. 3d 353, 355-56 (6th Cir. 1998); and *Arena v. Owens Corning Corp.*, 63 Cal. App. 4th 1178, 1183 (1998).

---

[2]To determine what substantive law governs, a federal transferee court in diversity jurisdiction applies the choice-of-law rules of the state in which the action was initiated.  *See Van Dusen v. Barrack*, 376 U.S. 612, 637-40 (1964)(citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 108 (1945)).  For the purposes of this motion, O-I cites to substantive Louisiana law as authority.  If it is discovered that Plaintiff intends to allege liability against O-I as an employer or premises owner of an Illinois facility, then O-I requests the opportunity to analyze and brief the choice of law issues applicable to this case.  No matter which state's substantive law applies, summary judgment for O-I is nonetheless appropriate because the facts of this case contain no evidence of asbestos exposure for which O-I is responsible.

It is undisputed that from May 1, 1958 onward, OCF manufactured and distributed Kaylo, was solely responsible for the product, and made material alterations to the formula and composition of Kaylo thermal insulation products.  *See* Affidavits and Documents, attached as Exhibit D.  Thus, O-I is not liable for Mr. Barackman's alleged exposure to asbestos-containing products manufactured or sold after May 1, 1958.  *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 516 (2004).

As will be demonstrated below, Mr. Barackman's alleged exposure to asbestos through his naval career occurs wholly **after** O-I's sale of all aspects of its Kaylo insulation line to OCF.  Because O-I, as a matter of law, is not liable for OCF Kaylo, O-I is entitled to summary judgment as to the above-referenced post-1958 work upon naval vessels.

> **2.     Plaintiff Has Produced No Evidence That Any Conduct By O-I Ever Caused Mr. Barackman's Injury**

Mr. Barackman passed away without giving a deposition.  One of Mr. Barackman's alleged coworkers from the U.S. Navy, Robert Murchison, provided a deposition, the only testimonial evidence in this case, on October 20, 2011, but he failed to provide any evidence whatsoever identifying the brand name of manufacturer of any asbestos-containing product to which he or Mr. Barackman worked with or around.  *See* October 20, 2011 Deposition of Robert Murchison, attached as Exhibit E.   Additionally, Mr. Murchison failed to provide any testimony that placed Mr. Barackman around any O-I product or facility.  *Id*.  Mr. Murchison  worked with Mr. Barackman in the U.S. Navy's Oceanographic Office for the first time in 1965 – at least **seven (7) years *after* O-I ceased all involvement with asbestos.**  *Id*. at p. 5, lines 21-23, p. 6, lines 14-18, p. 57, lines 3-25, p. 58, lines 1-4.  He did not work on an actual vessel with Mr. Barackman, and therefore could not provide any personal testimony about Mr. Barackman's alleged asbestos exposure upon any

vessel, until they worked upon the USNS Albert J. Myer (a fully refurbished ship) in the early 1980s – **decades** *after* **O-I ceased all involvement with asbestos.**  *Id.*  at p. 13, lines 17-25, p. 46, lines 13-19.  Mr. Murchison testified that he did not even know whether asbestos was present in the naval office buildings or on the USNS Albert J. Myer.  *Id.*  at p. 48, lines 11-15.  In summary, Mr. Murchison could not provide any information regarding Mr. Barackman's work outside of their mutual work within an office building (starting in 1965) and the USNS Albert J. Myer (for two months in the 1980s). *Id.*  at p. 57, lines 13-25, p. 58, lines 1-4.  Further, Mr. Murchison was unable to testify whether any insulation at those facilities contained asbestos and never uttered the words "Owens-Illinois" or "Kaylo."  Finally, Mr. Murchison did not provide any testimony or evidence regarding Mr. Murchison's work for O-I or at an O-I facility.   For the reasons discussed more fully below, there exists no genuine issue of material fact and Plaintiff's claims against O-I must be dismissed.

### C.    Summary Judgment Standard

Summary judgment is proper if the pleadings, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(2).  Once a properly supported Motion for Summary Judgment is made, the nonmoving party may not rest on the allegations of the pleadings.  "There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party" and "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 249-50 (1986). Additionally, the evidence must not be "merely colorable" but must be "significantly probative." *Id*. at 249.  "A motion for summary judgment will not be defeated by 'the mere

existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson*, 477 at 242, 247–48). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The significance of Rule 56 is underscored by the fact that, under "notice pleading,"a granting of summary judgment is the tool by which factually insufficient claims can be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources. *Id*; *see also, Celotex Corp. v. Catrett,* 474 U.S. 317, 327 (1986). Therefore, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 474 U.S. 317, 322-323 (1986).

### D.   Argument and Authority

As set forth in detail below, no genuine issue of material fact remains for trial as to O-I. Specifically, Plaintiff has failed to come forward with any evidence to establish that Mr. Barackman worked with or around a O-I asbestos-containing product or facility, much less that Mr. Barackman's exposure to said product or facility was a substantial factor in causing Mr. Barackman's injuries or damages.  Therefore, this Defendant is entitled to summary judgment as to Plaintiff's claims.

A necessary element of any tort claim is causation.  To prove causation, Plaintiff must establish that O-I's asbestos-containing product or conduct was a substantial contributing factor in

causing Plaintiff's alleged injuries or damages.  Causation is viewed based upon "the totality of the circumstances" surrounding a plaintiff's job duties and the products he used.  *Zielinski v. A.P. Green Industries, Inc.,* 263 Wis.2d 294, 308, 661 N.W.2d 491, 497 (Wis.App. 2003).  Plaintiff must show that the "defendant's product had such an effect in producing the harm as to lead a reasonable person to regard it as a cause" of Plaintiff's injuries or damages.  *Id.*

### 1.   Plaintiff Cannot Demonstrate The Existence Of A Material Fact And Will Be Unable To Carry Plaintiff's Burden Under Louisiana Law

In order to prove liability against O-I as a manufacturer, distributor, or seller of an asbestos-containing product, Plaintiff is required to demonstrate that Mr. Barackman was frequently and regularly exposed to asbestos dust **as a result of the acts and omissions of O-I.**[3]  *Asbestos v. Bordelon, Inc.*, 96-0525 (La. App. 4 Cir. 10/21/98); 726 So. 2d 926, 941;  *Abadie v. Metropolitan Life Ins. Co.*, 00-344, 00-856 (La. App. 5 Cir. 3/28/01), 784 So. 2d 46.  Additionally, Plaintiff bears the burden of proving that Mr. Barackman's exposure to asbestos attributable to O-I was a substantial factor in contributing to his alleged disease.  *See Quick v. Murphy Oil Co.*, 93-2267 (La. App. 4 Cir. 9/20/94), 643 So. 2d 1291, 1293; *Egan v. Kaiser Aluminum*, supra; *Young v. Logue*, 94-0585 (La. App. 4 Cir. 5/16/95); 660 So. 2d 32; and *Bordelon*, supra, 726 So. 2d at 948.

In *Bordelon*, supra, the Louisiana Fourth Circuit Court of Appeal explained:

> In asbestos cases, the term "exposure" refers to inhalation of asbestos fibers into the lungs.  Therefore, in order for such exposure to result in an asbestos-related disease, **the claimant must show that he has significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury. Without frequent, regular exposure to** [defendants product] by the

---

[3]Summary judgment for O-I is also proper under Illinois law.  The Illinois Supreme Court has reemphasized recently that "[a] plaintiff alleging personal injury in any tort action – including asbestos cases – must adduce sufficient proof that the defendant caused the injury . . . [and] proof which relies on conjecture, speculation or guesswork is insufficient."  *Nolan v. Weil-McLain*, 233 Ill. 2d 416, 434, 910 N.E.2d 549, 558 (Ill. 2009).

plaintiffs, we are without authority to say that the plaintiffs' handling of the [defendant's product] was a substantial factor in the causation of their injuries.

*Asbestos v. Bordelon, Inc.*, 96-0525 (La. App. 4 Cir. 10/21/98); 726 So.2d 926, 941 (emphasis added).

The court in *Thibodeaux v. Asbestos Corp. Ltd.* stated:

> Louisiana law requires that a plaintiff prove a defendant's asbestos-containing product was a substantial factor in causing his alleged disease.  In the instant case, the [Plaintiffs] have not provided any evidence which would defeat [Defendant's] motion for summary judgment.  Additionally, "[e]vidence of the mere physical presence of asbestos-containing material is insufficient to find a manufacturer liable to a plaintiff."  *Abram v. EPEC Oil Co.*, 05-0626, p. 6  (La. App. 4 Cir. 6/28/06); 936 So. 2d 209, 213, citing, *Roberts v. Owens-Corning Fiberglas Corp.*, 03-0248 (La. App. 1 Cir. 4/2/04); 878 So. 2d 631, 642.

*Thibodeaux v. Asbestos Corp. Ltd.*, 2007-0617 (La. App. 4 Cir. 3/17/2008); 976 So. 2d 859, 868.

In *Thibodeaux*, a plaintiff with mesothelioma sought recovery from Eagle because Eagle allegedly sold, installed, and removed asbestos-containing insulation at the plaintiff's place of employment.  *Thibodeaux*, 976 So. 2d at 861.  The *Thibodeaux* plaintiffs' evidence was found to be insufficient, and in affirming the summary judgment in favor of Eagle, the appellate court noted:

> In the present matter, the only evidence that the Thibodeauxs supplied regarding the alleged exposure to products is that at some point in time between 1959 and 1984, Eagle was one of several suppliers of asbestos-containing products at Charity Hospital.  The Thibodeauxs have not supplied any evidence that the asbestos was used at Charity Hospital while Mrs. Thibodeaux was there, nor was there any evidence submitted by the Thibodeauxs that she was actually exposed to asbestos-containing products from Eagle while she was at Charity Hospital.
>
> Mr. Charles Cline was employed by Charity Hospital as an insulator from October 1959 until June 1984.  He testified that during this period of time, insulation materials were ordered from at least five companies including,  Eagle,  Armstrong,  McCarty-Branton,

> Taylor-Seidenbach, Orleans Material, and possibly one or two others. However, in his deposition, he does not note any specific dates as to when Charity Hospital ordered products from Eagle, nor does his deposition contain any evidence that products were ordered from Eagle between 1963 and 1966, when Mrs. Thibodeaux was employed by Charity Hospital.

*Thibodeaux*, 976 So. 2d at 867.

"A plaintiff must establish his claim to a reasonable certainty, mere possibility, and even unsupported probability, are not sufficient to support a judgment in plaintiff's favor." *Vodanovich v. A.P. Green Indus., Inc.*, 2003-1079 (La. App. 4 Cir. 3/3/04);869 So. 2d 930, 934.  A Fourth Circuit opinion involving a mesothelioma claim, *Benard v. Eagle, Inc.*, 2008-0262 (La. App. 4 Cir. 12/3/2008); 1 So. 3d 588, similarly illustrates the need for product identification and the law's prohibition on speculation as to whether a particular plaintiff was exposed to a particular product:

> To prevail, a plaintiff in an asbestos case must show, by a preponderance of the evidence, **that he was exposed to asbestos from the defendants' products, and that he received an injury that was substantially caused by that exposure.** *Abadie v. Metro Life Ins. Co.*, 00-344 to 00-856 (La.App. 5 Cir 3/28/01), 784 So. 2d 46, 90.  When multiple causes of injury are present, a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm.  *Quick v. Murphy Oil Co.*, 93-2267 (La.App. 4 Cir. 9/20/94), 643 So. 2d 1291.  The only evidence that the Plaintiffs have that would support any finding that Mr. Benard came into contact with an Eagle product at Celotex is the deposition testimony of Mr. Huey Duhe.  Neither Eagle's nor OneBeacon's counsel were present for Mr. Duhe's deposition for they were not parties to the case in which Mr. Duhe's deposition was taken.
>
> We have reviewed the excerpt of Mr. Duhe's deposition that is attached to the Plaintiffs' opposition to the motion for summary judgment filed by Eagle and OneBeacon forming the basis for this Court's decision in writ 2005-C-1155.  **That testimony fails to establish that Mr. Benard ever came into contact with any Eagle product, let alone a significant quantity of an Eagle product that would justify holding Eagle and OneBeacon liable.  Our law does not permit one to speculate whether Mr. Benard came into**

**contact with a significant quantity of any Eagle product containing asbestos.** *Palermo v. Port of New Orleans*, 04-1804, 04-1805 (La.App. 4 Cir. 3/15/06), on rehearing, (La.App. 4 Cir. 1/19/07), 951 So. 2d 425, writ denied, 07-0363 (La.6/13/07), 957 So. 2d 1289; *In Re Asbestos Plaintiffs v. Bordelon, Inc.*, 96-0525 (La.App. 4 Cir. 10/21/98), 726 So.2d 926l; *Vodanovich v. A.P. Green Industries, Inc.*, 03-1079 (La.App. 4 Cir. 3/3/04), 869 So. 2d 930. Accordingly, we do not find that the facts of this case justify the application of the exception to res judicata in this case.

*Benard*, 1 So. 3d at 593-594 (emphasis added).

The *Benard* court further established that merely placing a defendant's product at a particular worksite does not satisfy Plaintiff's burden. The following footnote describes the inadequacy of the *Benard* plaintiff's evidence submitted in opposition to Eagle's motion for summary judgment:

> FN2.  Mr. Duhe's 1986 deposition merely establishes that Celotex may have purchased Eagle products at some point before the late 1950's.  **We fail to see how such could establish that Mr. Benard had substantial exposure to any Eagle product absent some formal evidence by a person that saw an Eagle product in the presence of Mr. Benard. It is well established that merely placing a defendant's product at a particular work site or establishing that the product was sold to the work site does not satisfy a plaintiff's burden of proving product identification under the law.** *See, e.g., Abadie*, supra, pp. 89-90.

*Benard*, 1 So. 3d at 593-594, n. 2 (emphasis added).

In the recent ruling of *Lucas v. Hopeman Bros., Inc.*, No. 2010-CA-1037 (La. App. 4 Cir. 2/16/11); 60 So. 3d 690, 692, 700-703, the Louisiana Fourth Circuit Court of Appeal upheld the trial court's granting of summary judgment in a wrongful death action as to three defendants: Westinghouse/CBS, Foster Wheeler, and Reilly Benton. The *Lucas* plaintiffs relied on the testimony of a coworker who was the sole eyewitness to the work performed by the decedent, and that coworker testified as to general asbestos exposure but did not testify that the decedent specifically

worked with Westinghouse/CBS, Foster Wheeler, and Reilly Benton. *Lucas*, 60 So. 3d at 696, 700-

703. Instead, the *Lucas* plaintiffs relied on a "plethora" of evidence which placed each defendant's

products at the work site. *Id*. This reliance proved fatal for the *Lucas* plaintiffs' appeal:

> While the plaintiffs have established that the decedent was more
> probably than not exposed to asbestos-containing wallboard installed
> by Hopeman Brothers, we find the plaintiffs have failed to show that
> Westinghouse/CBS's product was a cause in fact of the decedent's
> harm. **Specifically, we find the plaintiffs have failed to set forth
> sufficient proof that it was more probable than not that the
> wallboard to which the decedent was actually exposed was
> Micarta wallboard supplied by Westinghouse/CBS, or that the
> Micarta wallboard (as opposed to Maranite or UNARCO) was a
> substantial factor in having caused his asbestosis.** "A plaintiff
> must establish his claim to a reasonable certainty, [sic] mere
> possibility, and even unsupported probability, are not sufficient to
> support a judgment in the plaintiffs' favor." *Vodanovich*, 03–1079,
> p. 5, 869 So. 2d at 934. Accordingly, summary judgment in favor of
> Westinghouse/CBS was appropriate and we affirm this portion of the
> trial court's judgment.

*Lucas*, 60 So. 3d at 700-701 (emphasis added).

Even if Plaintiff could do so (and he has not), simply placing Kaylo at any facility where Mr.

Barackman worked does not satisfy Plaintiff's burden of proving product identification under the

law. Even if it did, simple contact is not enough – Louisiana law requires that a plaintiff establish

exposure to a *significant* quantity of *a defendant's* (as opposed to a group of defendants') product.

The law does not allow for speculating that Mr. Barackman *might* have come into contact with an

O-I asbestos-containing product or facility, as further illustrated by the Louisiana Fourth Circuit

Court of Appeal:

> **At best, the evidence submitted by the plaintiffs merely confirms
> that Foster Wheeler boilers were somewhere at Avondale, on
> some of the vessels being constructed and/or repaired, during
> some of the years of the decedent's employment.** As previously
> stated, in an asbestosis case, the plaintiff has the burden of

establishing at trial that he had significant exposure to asbestos-containing products "to the extent the exposure was a substantial factor in bringing about his injury" or disease. *Bordelon*, 96–0525, p. 30, 726 So. 2d at 948. **The mere physical presence of asbestos-containing materials at a particular job site is insufficient to find liability.** *See Abram v. EPEC Oil Co.*, 05–0626, p. 6 (La.App. 4 Cir. 6/28/06), 936 So.2d 209, 213, quoting *Roberts v. Owens–Corning Fiberglass Corp.*, 03–0248, p. 12 (La.App. 1 Cir. 4/2/04), 878 So.2d 631, 642.

*Lucas*, 60 So. 3d at 702-703 (emphasis added).

The Lucases contend that the decedent was exposed to asbestos as a result of working with or around half round insulation containing asbestos that was sold and/or supplied by Reilly Benton. Reilly Benton does not deny that it sold and/or supplied insulation materials to Avondale at various times, some of which contained asbestos, including calcium silicate products. **However, Reilly Benton contends that evidence of a mere physical presence of asbestos-containing materials is insufficient to establish liability. We agree.**

In support of their assertions of liability against Reilly Benton, the plaintiffs first rely on a portion of Mouton's deposition testimony wherein he describes the insulation that was purportedly being removed in work conducted on an oil tanker—a vessel upon which Mouton testified that the decedent was not working. Mouton was unable to identify the brand name of any of the insulation materials he claims to have removed while at Avondale. **Mouton further testified regarding the decedent installing insulation, or blankets, while at Avondale, but Mouton could not state who manufactured the blankets nor does Mouton's testimony establish that the blankets actually contained asbestos.**

The testimony of Warren Watters, President of Reilly Benton, does not substantiate the Lucases' claim that the decedent was exposed to asbestos-containing calcium silicate insulation and cloth supplied by Reilly Benton. First, it is indisputable that Reilly Benton was merely one of numerous vendors that sold calcium silicate products to Avondale. Next, Watters testified that while the Reilly Benton materials containing asbestos sold to Avondale varied from year to year, they may have comprised fifty percent of the total products that were sold.

-13-

> We agree with Reilly Benton that the evidence does nothing more than place the decedent at a worksite with products that were made by multiple manufacturers and supplied by multiple vendors, **but does not specifically place him around asbestos fibers emanating from a product Reilly Benton sold and/or supplied to Avondale. The record lacks evidence upon which reasonable minds could differ substantiating that the decedent was exposed to asbestos-containing products sold and/or supplied by Reilly Benton. Consequently, we agree with the trial court that even if all factual inferences reasonably drawn from the record evidence were construed in favor of the plaintiffs, the Lucases will still be unable to satisfy their burden of proving that the decedent was exposed to an asbestos-containing product sold and/or supplied by Reilly Benton such that it would have been a substantial contributing factor in the development of the decedent's asbestosis.** Accordingly, we affirm the trial court's judgment summarily dismissing the Lucases' claims against Reilly Benton.

*Lucas*, 60 So. 3d at 702-703 (emphasis added).

Like the circumstances  in *Lucas*, even if all factual inferences that could imaginably be drawn from the record were construed in favor of Plaintiff, Plaintiff would still be unable to satisfy his burden of proving that Mr. Barackman was exposed to an asbestos-containing product manufactured by O-I because the record is **wholly devoid** of any evidence that Mr. Barackman was exposed to asbestos fibers from O-I's conduct, an O-I facility, or an O-I product.  Even if Plaintiff could do so, placing Kaylo at any site where Mr. Barackman worked would not be enough – Plaintiff must provide product identification testimony from someone with personal knowledge of O-I products with which Mr. Barackman worked (or with knowledge of an O-I facility at which he worked), and they have failed to do so.  Summary judgment for O-I is appropriate.

### 2.	O-I Is Not Liable For Mr. Barackman's Alleged Exposure Because It Occurs Wholly After 1958

Owens-Illinois was a manufacturer of Kaylo thermal insulation products, which sometimes contained asbestos, until April 30, 1958, when it sold the entire Kaylo thermal insulation division

(product, raw materials, real property, patents, right to accounts receivable for goods sold after the effective date, etc.) to Owens-Corning Fiberglas. *See* February 17, 2005 Affidavit of Susan Gibbons and Sales Agreement, attached as Exhibit C. *See generally Egan v. Kaiser Aluminum & Chemical Corp.*, 94-1939 (La. App. 4 Cir. 5/22/1996) 677 So. 2d 1027, 1034 (noting that Kaylo packaging changed one month after April 30, 1958 sale to reflect OCF ownership); *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E. 2d 242, 249 (Ill. 1999) (noting sale of Berlin, New Jersey Kaylo plant to OCF as part of 1958 sale); *Allen v. Owens-Corning Fiberglas Corp.*, 571 N.W. 2d 530, 532 (Mich. App. 1997), FN 1; *Buttram v. Owens-Corning Fiberglas Corp.*, 941 P. 2d 71, 75 (Cal. 1997), FN 2; *Owens-Corning Fiberglas Corp. v. Garrett*, 682 A. 2d 1143, 1146 (Md. 1996): *Owens-Illinois, Inc. v. United Ins. Co.*, 650 A. 2d 974, 977 (N.J. 1994); *Owens-Illinois, Inc. v. Aetna Cas. And Sur. Co.*, 597 F. Supp. 1515, 1517 (D.C.D.C. 1984); *Rutherford v. Owens-Illinois, Inc.*, 941 P. 2d 1203, 1209 (Cal. 4th 1997); *Strickland v. Owens Corning*, 142 F. 3d 353, 355-56 (6th Cir. 1998); and *Arena v. Owens Corning Corp.*, 63 Cal. App. 4th 1178, 1183 (1998).

From May 1, 1958 onward, OCF manufactured and distributed Kaylo, was solely responsible for the product, and made material alterations to the formula and composition of Kaylo thermal insulation products. *See* Affidavits and Documents, attached as Exhibit D. Thus, O-I is not liable for Mr. Barackman's alleged exposure to asbestos-containing products manufactured or sold after May 1, 1958. *Cadlo v. Owens-Illinois, Inc.*,125 Cal. App. 4th 513, 516 (2004).

This issue has been repeatedly litigated. For example, in *Cadlo*, O-I filed a motion for summary judgment on the grounds that, because the plaintiff did not allege exposure until 1965, any alleged exposure to Kaylo occurred after the sale of the Kaylo line to OCF and O-I was not liable. *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 517-18 (2004). The *Cadlo* court, after noting

the history of Kaylo distribution, O-I's sale to OCF, and O-I's cessation of "all manufacture, sale, and distribution" in 1958, stated that, "to establish a defendant's liability for injuries caused by a product, the plaintiff must show, at least, that he was exposed to the defendant's product." *Id*. at 523.  In upholding the summary judgment in O-I's favor, the *Cadlo* court stated:

> Furthermore, the Cadlos have not demonstrated how they could make such a showing were they granted leave to amend.  According to the undisputed evidence discovered prior to the summary judgment motion in this case, **Owens-Illinois ended all association with Kaylo when it sold its Kaylo division in 1958.**  Anthony Cadlo was 13 1/2 years old at the time, and, as the Cadlos themselves acknowledge, they have never alleged that, as a boy, Anthony Cadlo saw ads for Owens-Illinois's Kaylo and then "went out and bought some." **After 1958, Owens-Illinois made no representations about Kaylo, false or otherwise.**  Cadlo's first exposure to Kaylo was in 1965, and the Kaylo to which he was exposed was manufactured by OCF.  **Consequently, any misrepresentations about Kaylo's safety on which he might have relied would have been made by OCF.**

*Cadlo*, 125 Cal. App. 4th at 520 (emphasis added).

Additionally, while stressing the importance of who manufactured the actual product that allegedly caused the harm, the *Cadlo* court stated:

> Owens-Illinois may have designed the original Kaylo, but the Cadlos offered no evidence that Owens-Illinois was the designer of the Kaylo sold by OCF during the time of [Plaintiff's] exposure.  Nor was there evidence that Owens-Illinois was the designer of an integral element in the manufacture of another product, by a different company, without which OCF's Kaylo could have been produced. **The [Plaintiffs] presented no evidence that after OCF bought Kaylo, Owens-Illinois played any role in the design, manufacture, distribution, or marketing of OCF's Kaylo.**
>
> The purpose of imposing strict liability "is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market." **Therefore, a continuous course of business is a necessary condition for application of this rule.**  Owens-Illinois had had no business association with, direct or indirect financial interest in, or control

> over Kaylo for seven years by the time [Plaintiff] was exposed to OCF's Kaylo. **Because Owens-Illinois was not 'an intergral part of the overall producing and marketing enterprise' of OCF's Kaylo, it was not strictly liable to plaintiffs as a matter of law and was entitled to summary judgment.**

*Id.* at 524 (internal citations omitted)(emphasis added).

Louisiana products liability law principles do not hold an entity liable when a product the entity did not manufacture, distribute, or control causes injury. **"We are not prepared to hold a manufacturer responsible for alleged inadequate warnings about a product it neither manufactured nor sold.** We cannot abandon the general rule of products liability requiring identification of the product with the manufacturer." *Fricke v. Owens-Corning Fiberglass Corp.*, 618 So. 2d 473, 475 (La. App. 4 Cir. 1993)(emphasis added).

In *Fricke*, Nabisco sold its Fleishman's vinegar business to another company ten months prior to an incident in which a worker died from being overcome by vapors in a mustard vat tank. *Fricke*, 618 So. 2d at 474-75. Plaintiff's estate brought a products liability claim against Nabisco and alleged it failed to provide adequate warnings in connection with its manufacturing of vinegar. *Id.* The Louisiana Fourth Circuit Court of Appeals granted summary judgment in favor of Nabisco by stating:

> In the instant case, Nabisco neither sold nor manufactured the vinegar which allegedly caused plaintiffs' damages. The facts are well established that Nabisco had sold its vinegar business ten months earlier. Our review of Louisiana jurisprudence reveals no case dealing with this issue **Under the facts of this case, we are not prepared to hold a manufacturer responsible for alleged inadequate warnings about a product it neither manufactured nor sold.** We cannot abandon the general rule of products liability requiring identification of the product with the manufacturer.

*Fricke*, 618 So. 2d at 475 (emphasis added).

-17-

*Fricke* was discussed in a federal court decision, *Jefferson v. Lead Indus. Asso., Inc.*, 930 F. Supp. 241 (E.D. La. 1996). *Jefferson* involved an action brought by an infant's representative against lead paint manufacturers under the Louisiana Products Liability Act ("LPLA"). *Jefferson*, 930 F. Supp. at 242. In finding that the plaintiff's case had no merit on a number of grounds, the U.S. District Court for the Eastern District of Louisiana found that the primary reason for the plaintiff's failure to state a claim was that she had not identified the manufacturer whose product caused the injury. *Id.* at 244. The *Jefferson* court noted that, in actions filed both pre-and post-enactment of the LPLA, plaintiffs have the burden of proof that a manufacturer's product proximately caused his or her injury.

*Christian v. Minnesota Mining & Manufacturing Company*, 126 F. Supp. 2d 951 (D. MD. 2001), involved the sale of a defective breast implant line by 3M (Manufacturer 1) to McGhan (Manufacturer 2). Even though 3M allegedly knew the implants were defective and arguably had close ties to McGhan, the court cited *Fricke* and ruled that, because the implants in question were actually manufactured 4-5 years after 3M sold the company, 3M did not have a duty to warn (in the contexts of negligence and strict liability).

As the evidence, testimony and pleadings reflect, Plaintiff does not allege that Mr. Barackman was exposed to asbestos manufactured by O-I (or as a result of O-I's conduct) prior to 1965 – approximately seven (7) years *after* O-I ceased all involvement with the thermal insulation business. Any Kaylo to which Mr. Barackman was imaginably exposed would have been manufactured by Owens-Corning Fiberglas. While the products have the name "Kaylo" in common, O-I Kaylo and OCF Kaylo are different products from different manufacturers. Louisiana's law on products liability and national jurisprudence both conclude that O-I is not liable for a product

-18-

manufactured by a different entity.  Summary judgment for O-I is appropriate.

## III.   <u>CONCLUSION</u>

One of the most fundamental obligations of Plaintiff as to any particular defendant is to present evidence that the defendant was responsible for Mr. Barackman's alleged exposure to asbestos-containing products.  In the case at hand, there is a complete lack of testimony that Mr. Barackman worked with or around an asbestos-containing product associated with O-I.  Further, there is no evidence that Mr. Barackman was exposed to asbestos prior to 1965 – approximately seven (7) years *after* O-I's 1958 sale of all aspects of its thermal insulation line.  There is no fact in dispute to support denial of O-I's motion for summary judgment, as Plaintiff has presented *nothing* to demonstrate that O-I had any asbestos-containing product at any of Mr. Barackman's work site or that he was exposed to any asbestos-containing product attributable to O-I that resulted in his alleged asbestos-related disease.  Since the record is completely devoid of evidence that O-I performed any act or manufactured any asbestos-containing product that contributed to and or caused Plaintiff's injuries or damages, summary judgment is appropriate with respect to this Defendant.  Accordingly, no fact issue remains for trial as to Plaintiff's claims against O-I, and O-I is entitled to judgment as a matter of law.

**WHEREFORE, PREMISES CONSIDERED**, O-I respectfully requests that this Court

enter an order granting summary judgment in its favor against Plaintiff.

Respectfully submitted,

  //s// Ann R. Chandler
ANN R. CHANDLER (LA BAR NO. 30953)

**ON BEHALF OF OWENS-ILLINOIS, INC. D/B/A O-I**

**OF COUNSEL:**

**FORMAN PERRY WATKINS KRUTZ & TARDY LLP**
200 South Lamar Street
City Centre, Suite 100
Post Office Box 22608
Jackson, Mississippi  39225-2608
(601) 960-8600; FAX: (601) 960-8613

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which sent notification of said filing to all known counsel of record.

This the 6th day of April 2012.

<u>  //s// Ann R. Chandler                                          </u>
ANN R. CHANDLER (LA BAR NO. 30953)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | CONSOLIDATED UNDER |
| LIABILITY LITIGATION (NO. VI) | : | MDL DOCKET NO. 875 |

| | | |
|---|---|---|
| MICHAEL GRANT MASON, | : | |
| Representative of the Succession of | : | EDPA CASE NO.: 2:11-cv-66772-ER |
| Milan Arthur Barackman | : | |
| | : | |
| VS. | : | |
| | : | |
| FOSTER WHEELER, LLC, ET AL. | : | (U.S.D.C. PENNSYLVANIA EASTERN) |
| | : | |
| Defendants | : | |

**MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS WITH INCORPORATED**
**SUPPORTING MEMORANDUM FILED**
**ON BEHALF OF DEFENDANT OWENS-ILLINOIS, INC. D/B/A O-I**

**STATEMENT OF UNCONTESTED MATERIAL FACTS**

1.      The instant asbestos action was originally commenced against O-I and numerous other

defendants on June 1, 2011 in the United States District Court for the Eastern District of

Louisiana.  The complaint alleged that Decedent Milan A. Barackman was exposed to

numerous asbestos-containing products and equipment made, manufactured, and/or supplied

by the defendants, including O-I, throughout his work career serving on United States Navy

vessels in the 1960s and 1970s.  O-I was sued in the capacity of an "Asbestos Manufacturer

Defendant," and Plaintiff claimed that O-I was liable as a manufacturer of an

asbestos-containing product called Kaylo to which Mr. Barackman allegedly encountered

through his service on the U.S. naval vessels.  The complaint contained no allegations of

liability for premises owners or employers.

2.    On July 12, 2011, this case was transferred to the United States District Court for the Eastern District of Pennsylvania for inclusion in *In Re: Asbestos Products Liability Litigation*, MDL 875 via Transfer Order No. 1033.

3.    On  August 24, 2011, this Court issued a Scheduling Order setting forth deadlines for the parties to complete discovery, submit expert reports, and file dispositive motions.  Pursuant to the Scheduling Order, dispositive motions must be filed by April 7, 2012. The Court extended the deadlines for discovery and for the parties to file their expert reports in its February 24, 2012 Order.  The February 24, 2012 Order did not contain a new date for the filing of dispositive motions.

4.    On March 27, 2012, Plaintiff filed his First Amended Complaint.  Like Plaintiff's original complaint, the amended complaint did not address the liability of premise defendants or employers, and O-I was again named as a party liable only as an "Asbestos Manufacturer Defendant."  In fact, the amended complaint was virtually identical to the original, save for the addition of one sentence stating "Mr. Barackman was exposed to asbestos when he worked for Owens Illinois Glass Co., in Streator, Illinois from February 1956 to September 1956."  Plaintiff's amended complaint contained no specific allegations of liability against O-I other than the general paragraphs applicable to asbestos manufacturer defendants.

5.    As demonstrated below, O-I ceased all involvement with the asbestos insulation business in 1958 – approximately seven (7) years prior to Milan A. Barackman's first alleged exposure to asbestos.

6.    Plaintiff failed to offer any evidence indicating that O-I's conduct caused Mr. Barackman to become exposed to asbestos.

Respectfully submitted,

  //s// Ann R. Chandler
ANN R. CHANDLER (LA BAR NO. 30953)

**ON BEHALF OF OWENS-ILLINOIS, INC. D/B/A O-I**

**OF COUNSEL:**

**FORMAN PERRY WATKINS KRUTZ & TARDY LLP**
200 South Lamar Street
City Centre, Suite 100
Post Office Box 22608
Jackson, Mississippi  39225-2608
(601) 960-8600; FAX: (601) 960-8613

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I have electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which sent notification of said filing to all known counsel of record.

This the 6th day of April, 2012.


 //s// Ann R. Chandler
ANN R. CHANDLER (LA BAR NO. 30953)